6-2147 Sunday Williams vs. United States Thank you. Good morning. Good morning. My name is Simone Berlini. I represent Appellant Sunday Williams. Please bring the microphone a little closer, please. May I reserve one minute for rebuttal? Yes. I do think you're going to have to speak up a bit more. Okay. You may have one minute. Counsel, let me help you out as you get started in this case. Where in your petition do you allege misadvised versus failed advice? In the original Coram Nobis petition, we cited the record where Counsel for Williams informed the court… Your answer is you did not. Isn't that correct? Well, okay. On the first Coram Nobis petition, we… What is your answer? Did you allege misadvised versus failed advice? I didn't characterize it as a misadvice. Then why didn't you seek to amend if the law is that clear? Well, the argument was before the court because after the government filed a motion to dismiss, we did present it with our opposition to the motion. Obviously, it was more developed during the opposition to the motion to dismiss, but… Then why still didn't you seek to amend? We did not amend it. All right. The first issue in this case is whether Counsel was effective when he withdrew his motion to dismiss in a case where the case had to be dismissed as a matter of law, and he did so without his client's consent. The record reflects that prior to a plea hearing, Williams was informed by his attorney that an intervening ruling from this court changed the prior rulings on his case, in particular the ruling on a motion to dismiss for lack of venue and a motion for a change of venue. The record also reflects that during the actual hearing, the court asked Counsel whether he wanted to make a motion to dismiss. Counsel did make that motion to dismiss based on the intervening ruling of United States v. Salinas. The court also confirmed with Counsel whether Williams wanted the indictment to be dismissed, and Counsel, on his behalf, said, yes, he does. In response, the government made a request for a delayed ruling on the motion to dismiss to allow the government to file new charges, specifically the new charge being making false statements. I understood the government to suggest that it was prepared to file a superseding indictment charging your client with a material false statement, which happened to be made on his passport application. And that all that Counsel agreed to was the additional time. You have, in your papers, characterized that as a change of plea, and yet the district court found correctly, in my view, that this wasn't about a change of plea. This was about giving the government more time. There are later hearings, after they've brought the new indictment, at which your client is given the opportunity to plead guilty or not. Do we agree thus far? I agree with you, Your Honor, but that day the indictment had to be dismissed It could have been transferred. That would have been fine for Williams. Okay, so we get to the guilty plea hearing, and you're not really claiming that your client didn't understand he was pleading guilty. And the judge, whatever Counsel had said or failed to say, and I agree with Judge Baldock that what you pled is a failure to give advice on immigration consequences. The judge gave the advice and said that there will be immigration consequences with your plea. Doesn't your case end at that point? Your Honor, I will agree with you, but Williams didn't have a meaningful choice between pleading guilty and going to trial, because his finances were getting drained by constant trips to New Hampshire. He was presented with the opportunity of resolving the case with just paying a $100 fine and three years of probation. He would have gone to trial. He wasn't looking at jail time. But you're here years later on a special writ, trying to make the argument that if his lawyer had only told him there would be immigration consequences, then he wouldn't have pled guilty. But whatever the lawyer said, the judge told him that. So how can you possibly show any prejudice, which is part of your obligation on an ineffective assistance claim? Well, Your Honor, during the plea colloquy, Williams' counsel did not advise him that he didn't have to make a specific reference to a U.S. passport application. That extended plea offer by Williams was obviously required for the passport fraud charge, but the passport fraud charge at that point was dismissed. At that point, he was only being charged with making false statements. Excuse me. If it had gone to New York, if it had been transferred to New York, or it had been dismissed but new charges were brought in New York, there would have been passport fraud charges, yes? Yes. And they have the same immigration consequences. Yes, but he would have had the opportunity of going to trial. After all, in Salinas, the defendant was charged with passport fraud and he was sentenced to a fine of $500 and one year of probation. It is safe to assume that he wasn't looking at... Well, unless he was acquitted of passport fraud, and that seems rather unlikely given that he pled guilty to making a false statement, actually three of them on his passport application. Again, don't you have a problem with prejudice? The prejudice that I see here, Your Honor, is that he didn't have a meaningful choice of going to trial or pleading guilty. His finances were getting drained, his wife had just had two babies. In this case, in Salinas, held that it's common ground that a criminal defendant has a right to betray in the appropriate venue. The importance of this right is emphasized by the fact that it's mentioned not once, but twice in the test of the Constitution. In addition to showing prejudice, you have to explain a rather long delay. In other words, for this writ to be successful, you've got to show that your client acted with reasonable dispatch once he knew or should have known that there was a problem. Well, Williams knew that his factual basis of being guilty made him ineligible permanently for permanent residency only when he actually applied for it. Except what the chronology is, you're saying the lawyer said to him, this is just criminal, it has no effect on your immigration stuff. He then walks into a courtroom with a judge, not once, but twice, tells him this actually could have resulted in deportation. So he knows right then that if the lawyer had indeed said that to him, it's wrong in the most major possible way it could be wrong. How can you then say it's reasonable for him to rely on that for a second longer, much less for several years longer? Well, I would suggest that the court informed Williams that immigration consequences may occur, and he was just relying on his counsel's specific advice in this case and nothing to do with this immigration case. Thank you. You've reserved a minute. Good morning. Seth A. Frame for the United States. As Judge Coyotta pointed out, this is here on a writ of quorum novus, which requires not only most fundamentally, but the fundamental flaw in the proceedings. So the defendant argues, or the petitioner argues, that that happened in three ways, which he characterizes as three, I guess, forms of ineffective assistance of counsel. The first he calls to respond to a change of plea. I think Judge Lynch correctly suggests that's not actually what happened. What actually happened is that there was a pending motion to dismiss. The court said, I'm prepared to grant that, and the government said it requested instead of that to have additional time to file a superseding indictment. The defense lawyer agreed to that. So for it to be ineffective assistance of counsel, that had to fall below professional norms, and it's not clear from this record what there fell below professional norms. The government had indicated in the colloquy it was going to re-indict the defendant. There was no statute of limitations problem. That could be a reason. If the government wasn't able to re-indict and instead allow a superseding indictment, that could be a problem, but we don't have that problem. So the government either filed a new indictment charging 1,001 in the District of New Hampshire over which it's undisputed that it's venue, or it filed a superseding indictment for 1,001 over which there's no question that there's venue. There was a disadvantage to the defendant from going the new indictment route, which was he would have to be re-arrested, reprocessed, come to New Hampshire, or some way that would have had to happen. That is an additional hurdle. He would have had to face a superseding indictment. So there was some small detriment. There was no advantage. So it seems to me that there was no ineffective assistance of counsel for the lawyer to choose the superseding indictment route. Secondly, there's no prejudice here. The prejudice claimed is that the case should have happened in New York, not New Hampshire. Well, there's a venue in New Hampshire, so the only question is, is New York a better place to try the case? And there's a motion, there's a procedure under Rule 21 that was available. He filed that motion before the district court judge. It had been denied in the Passport Fraud case. None of the papers in this case suggest there were some new arguments that were going to be made. So there's no basis there for this court to conclude that a new indictment with a new Rule 21 motion would have had some other results than the earlier Rule 21 motion that had been denied. And finally, this isn't about immigration. This isn't about a collateral consequence years later. This argument is about where the case should have been tried. He knew he was tried in the District of New Hampshire every day. Every day he pled, the day he pled, when his direct appeal period ran out, and when the year to file a 2255 year ran out. He knew the case was in New Hampshire. He never raised this argument until 2015. It's way too late for that argument to prevail on a writ of quorum notice. The second argument on appeal is called bad deportation advice. As Judge Baldock pointed out, that wasn't the argument that was made below. The argument made below was no advice about legal permanent residency. And the government responded to that with the PDEA, that that argument, a no advice, a bad, sorry, an argument about legal permanent residency is not covered by PDEA. And that argument was accepted by the district court. On appeal, the argument has now become it was actually bad immigration advice. Well, there was an affidavit below that put that before the district court, and then the district court engaged with that. With bad immigration advice? Yes. The district court below dealt with the case as, if you are arguing immigration advice, you're too late. I'm sorry, deportation advice. Because no retroactivity under SHADAS, and I believe you wrote the opinion, but there is an opinion in this court after this case, which holds that if it's a bad advice, if it's incorrect advice as opposed to no advice, then there is retroactive application. This was a no advice about legal permanent residency. So SHADAS should control because it's a no advice case, and in any event, PDEA doesn't apply because it's a legal permanent residency case and not a deportation case. That was the argument. But what's argued in the briefs is bad, incorrect deportation advice. That gets around the PDEA problems. If it had been argued below, but as Judge Baldock pointed out earlier, it wasn't, so the government's first argument is waiver. But really, if you get to the merits of this, I think Judge Lujan's notion is the correct one, which is there's no prejudice because the district court told the defendant, deportation is a possible consequence here, and I cited several cases in which courts have held there's no PDEA error under the prejudice prong when the defendant's told by the judge that deportation is a possible consequence. And in any event, he's not been deported. He's been granted withholding of removal. So that collateral consequence hasn't happened. I wanted to ask about that. That's because of conditions in his home country? Yes. So it is correct that that could change at some future time. I don't think the court reaches this nuance, but it seems to me that if you're going to invoke this writ, you have to have had the collateral consequence have happened, not the possibility that sometime in the future you may lose the benefit you have today. I'm not taking a formal position on that, but I think that would be our argument at this point. Because right now he's not in deportation. He is in this country with a withholding of removal order. Okay. And the final argument is that the lawyer erred by letting him admit to the facts of passport fraud, which involves an admission that you falsely claimed U.S. citizenry, when instead he should have only, because it was a 1001 argument, that they should have just pled to a false statement in a travel document so that someone couldn't have figured out later that it was actually a false claim of U.S. citizenship. The government's position on that is, first of all, that asks for clairvoyance by the trial lawyer. And I think that Strickland doesn't require clairvoyance. There was no legal permanent residency application. His eligibility wasn't there for that because that was contingent on the wife getting citizenship. That didn't even happen. So what's being requested is under Strickland, the lawyer should have known that someday his client may seek lawful permanent residency if the wife ever gets citizenship. And based on that possibility, he should advise him to only plead to a false statement in a travel document. But had he done that, I think there would have been significant problems in getting this plea accepted. Because under 1001, one of the elements of the offense is that the false statement's material. A court can't know it's material unless it knows it's a false statement. As to what? Because a material false statement is one that can affect a government decision. What we have to know, what is the government decision? What does the government look to? If you just say it was a false statement in a travel document, how can a judge decide if that's a material false statement? If you know it's a passport document and it's a false statement as to citizenship, then you can make the materiality determination. I'm looking at the defendant's reply, but he doesn't perceive that argument and says that 1001 doesn't require the defendant to know he's making the statement to the government. That's not the government's argument in this brief. The government's argument in this brief is that the passport aspect was necessary for the court to conclude materiality. So I don't believe that Strickland is met for that part either. So unless the court has any questions, for those reasons, the court should defer when the government has regressed in this brief. Thank you. As Judge Carietta suggested before, there was an affidavit from Williams setting forth the affirmative misrepresentation by counsel. It is true that they weren't fully developed in the Coram Nobis petition, but it's also true that most of the arguments that the government is making today were raised in the Successive Motion to Dismiss, and the District of New Hampshire recognized that it may have been improper for them to file successive motions, but nonetheless, the court heard the arguments. In the same way, we can say that the court should have considered Williams' argument in his affidavit. As far as the prejudice and factual basis that should not be included, in Padilla, the Supreme Court said that counsel who possessed the most rudimentary understanding of the deportation consequences of a particular human offense may be able to bargain creatively with the prosecutor in order to craft the conviction. Counsel, one thing I've wondered about in this case is, is it really in your client's interest to call attention to him with the immigration authorities by bringing this litigation? Your Honor, my client's position... Did you talk to your client about that? I did, Your Honor. Yes or no? I did, Your Honor. Thank you. I envisioned him the problem. That's it. Thank you. Thank you. Thank you.